IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

**LUTHER WAYNE DILLON**                                    **PLAINTIFF**

V.                     **CASE NO. 3:18-CV-03063**

**SHERIFF MIKE MOORE, Boone County
Sheriff's Office; and JASON DAY, Jail
Administrator, Boone County Sheriff's
Office**                                                   **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This is a civil rights action filed by the Plaintiff Luther Wayne Dillon ("Dillon") pursuant to 42 U.S.C. § 1983. Dillon proceeds *pro se* and *in forma pauperis*.

Dillon is incarcerated in the Boone County Detention Center ("BCDC"). Dillon contends his constitutional rights were violated when: (1) his access to the law library was cut off and (2) he was no longer allowed to call his sister. Dillon has sued Defendants in their official capacities only.

On December 11, 2018, Defendants filed a Motion for Summary Judgment (Doc. 18). The following day, an Order (Doc. 21) was entered directing Dillon to file a response to the Motion for Summary Judgment by January 2, 2019. Dillon was advised that failure to comply with the Court's Order (Doc. 21) would result in: (a) all of the facts set forth by the Defendant in the summary judgment papers being deemed admitted by Dillon, pursuant to Rule 56.1(c) of the Local Rules for the Eastern and Western Districts of Arkansas; and/or (b) his case being subject this case to dismissal without prejudice, pursuant to Local Rule 5.5(c)(2). Dillon has not filed a response, and the time for doing so has passed.

[1]

Although the local rules allow the Court to deem a defendant's facts as admitted when a plaintiff does not file a response to summary judgment specifically disputing those facts, the Eighth Circuit has stated:

> A plaintiff's verified complaint is the equivalent of an affidavit for purposes of summary judgment, and a complaint signed and dated as true under penalty of perjury satisfies the requirement of a verified complaint, 28 U.S.C. § 1746. Although a party may not generally rest on his pleadings to create a fact issue sufficient to survive summary judgment, the facts alleged in a verified complaint need not be repeated in a responsive affidavit in order to survive summary judgment motion.

*Roberson v. Hayti Police Dep't.*, 241 F.3d 992, 994-995 (8th Cir. 2001). Therefore, the Court will "piece[] together [Dillon's] version of the facts from the verified complaint." *McClanahan v. Young*, No. 2016 WL 520983, at *1 (D.S.D. Feb. 5, 2016). Those portions of the Defendants' statement of material facts that do not conflict with Dillon's verified complaint will be deemed admitted. *Id.*

## I. BACKGROUND

On December 4, 2017, Dillon was charged by information with three counts of rape, criminal attempt to commit rape, three counts of sexual assault in the second degree, three counts of sexual indecency with a child, and three counts of sexually grooming a child in connection with his activities with his three step-children (Doc. 20-6 at 5). On February 6, 2018, Dillon was booked into the BCDC. (Doc. 20-2 at 5). On February 23, 2018, Dillon appeared in the Boone County Circuit Court and indicated he had hired attorney Justin Downum to represent him. (Doc. 20-6 at 7). On March 13, 2018, Downum entered his appearance in Dillon's criminal case. *Id.* at 8. Downum visited Dillon in jail on several occasions. (Doc. 20-2 at 19-20).

On March 19, 2018, Corporal Michael Eddings was informed that Dillon had received mail from his alleged victims. (Doc. 20-2 at 7, 12). Eddings contacted the

[2]

prosecutor's office and was advised that Dillon should not be allowed to have any contact with his alleged victims. *Id.* at 12. Eddings informed Silva that Dillon was to have no contact with the victims in his case. (Doc. 20-2 at 8).

According to the allegations of the Complaint, on April 26, 2018, Sheriff Moore had Dillon's access to the kiosk blocked, including his law library and commissary, for having broken a protective order. (Doc. 20-5 at 6-7). Dillon testified that from February 6, 2018, until the jail blocked his access, he had used the kiosk to contact the mother of the alleged victims. (Doc. 20-5 at 7). Dillon believes someone realized that he had been contacting the mother, so Jail Administrator Jason Day had his e-mail turned off. (Doc. 20-1 at 2; Doc. 20-5 at 8). Dillon testified that for approximately a month, "they blocked the whole kiosk" and he "wasn't able to even get into [his] account." (Doc. 20-5 at 8). Therefore, he filed paper grievances instead of electronic ones. *Id.* at 9.

On May 6, 2018, Dillon submitted a written grievance asking the Sheriff to reinstate his assess to the law library and to the commissary. (Doc. 20-3 at 20). Dillon stated no one had informed him about the protective order. *Id.* Dillon wanted to be able to conduct research on his criminal charges. (Doc. 20-5 at 11).

According to Day, when he was informed that Dillon was having problems with access to the electronic law library and commissary, he directed a deputy to check the kiosk and asked Deputy Jason Silva to follow up with the vendor, Smart Jail Mail, to resolve the problem. (Doc. 20-1 at 3). Day asserts that officers did not block Dillon's access to the law library or commissary. *Id.* Day maintains the error was purely a technical one. *Id.*

On May 9, 2018, Dillon spoke to his sister on the phone. (Doc. 22 (audio recording)). Dillon and his sister talked about "her" and discussed how she was not

[3]

going to let the boys, the alleged victims, get on the stand or talk to the prosecutor. *Id.* Dillon asked his sister to contact "you know who" and have her write a letter on his behalf and to put money in his commissary account. *Id.*

On May 11, 2018, Eddings discovered that during Dillon's phone call with his sister, he had asked her to contact the victims' mother on his behalf. (Doc. 20-2 at 12). Eddings contacted the prosecutor's office and confirmed that Dillon was to have no contact with the victims or their mother. *Id.* Eddings emailed jail staff and directed them to block Dillon from calling the sister's phone number again. (Doc. 20-2 at 10, 12). Silva responded: "Consider it done." *Id.* at 10.

Defendants have submitted the phone logs of the individual assigned pin # 32541. (Doc. 20-4 at 2-12). However, there is nothing in the logs that identifies Dillon as the individual having that pin number. *Id.*

On May 12, 2018, Dillon submitted a grievance asking why his phone calls to his sister, Charlotte Joyner, and the inmate hotline[1] were blocked. (Doc. 20-3 at 21). He also stated he had not heard back about his law library and commissary access. *Id.*

On May 13th, Day responded that "per CID the email has been turned off because of it being used to contact victims. You should have access to commissary & law library." (Doc. 20-3 at 21). Dillon appealed stating the he had tried every day since April 26th, and every day the kiosk said his ID was inactive. *Id.* at 22.

On May 21, 2018, Silva emailed Justin Scott with Smart Jail Mail and informed him that Dillon was unable to access the law library. (Doc. 20-2 at 22). Scott replied that he checked kiosk B and was able to access the law library without problems. *Id.* at 21.

---

[1] Dillon testified the inmate hotline was an operator who could tell you why phone calls to certain numbers were blocked. (Doc. 20-5 at 11).

[4]

Scott stated Dillon had not signed into the kiosk since April 23rd. *Id.* The following morning, Silva informed Scott that Dillon and an officer tried to access the law library the day before and were not able to do so. *Id.* Silva reported that something must be wrong with Dillon's account. *Id.* Silva stated that he blocked Dillon's access to emails, but that Dillon needed to have access to the law library and commissary. *Id.* Later that morning, Scott replied that he had remoted into the kiosk, logged into Dillon's account, and was able to access both the law library and the commissary. *Id.* If Dillon had trouble again, Scott indicated they should be notified while Dillon was using the kiosk so that they could troubleshoot the issue at that time. *Id.*

Dillon testified he got access to the law library and his commissary after approximately a month. In other words, he maintains he did not have access from April 26th to May 24th or 26th. (Doc. 20-5 at 20-21). During this time, Dillon testified that he did not have any pleadings to file, and none of his cases or pleadings were dismissed. *Id.* at 21. Dillon had wanted to look up the rules and regulations that applied to his criminal case to educate himself. *Id.* at 22-23. Dillon concedes he was represented by Downum and was able to contact him and ask him for information. *Id.* at 23-24.

On May 30, 2018, Silva sent an email to Scott saying that Day had just verified that Dillon did not have access to the law library. Silva asked that it be fixed.

On June 4, 2018, Dillon filed this case.[2] Dillon's access to the kiosk was unblocked on June 5, 2018.

The BCDC written policy regarding inmate correspondence provides that it may be restricted if the correspondence: is prohibited by the court; would violate Arkansas

---

[2] On May 21, 2018, Dillon filed a lawsuit, *Dillon v. Day*, Civil No. 18-3057, in which he alleged a violation of his right to confidential conversations with counsel. Day was granted summary judgment in that case on January 18, 2019.

[5]

Codes; would violate the wishes of persons receiving the correspondence; or pose a threat to the order or security of the BCDC or the Court. (Doc. 20-1 at 2). If mail is restricted, the jail administrator is to document in writing the reason for the restriction and place a copy in the detainee's file as well as in a mail log kept in pod control. The inmate is advised of the restriction. *Id.*

## II.    LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In this case, the facts set forth by the Defendants are deemed admitted except to the extent they conflict with the verified Complaint. The question is whether, given the facts as admitted, there are genuine issues of material fact as to whether Plaintiff's constitutional rights were violated.

## III.    DISCUSSION

Defendants contend they are entitled to judgment as a matter of law for the following reasons: (1) Dillon was not denied access to the courts; (2) the restriction on Dillon's phone call privilege was reasonable in light of the order of protection; (3) Dillon is not entitled to a grievance procedure; (4) Defendants are entitled to qualified immunity on any personal capacity claim;[3] and (5) there is no basis for official capacity liability.

### A.  Access to the Law Library

The Supreme Court has held "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of

---

[3] Defendants indicate they have not addressed individual or personal capacity claims since Dillon indicates he has sued them in their official capacities only. (Doc. 18 at 1 n.1). However, they go on to address the personal capacity claims in their briefing, including arguing that they are entitled to qualified immunity.

meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828 (1977) (emphasis added). This right extends to an inmate's opportunity to challenge his sentence, directly or collaterally, and to challenge his conditions of confinement. *Hartsfield v. Nichols*, 511 F.3d 826, 831 (8th Cir. 2008). The right does not require a state to enable a prisoner to *discover* grievances and to *litigate effectively* once in court. *Lewis v. Casey*, 518 U.S. 343, 354 (1996).

It is undisputed that Dillon could not access the law library on the kiosk for approximately one month. He sought to conduct research in connection with his pending state criminal case. However, Dillon was represented by an attorney during the relevant time frame and had access to that attorney. Representation by counsel satisfies the right of access to the courts. *Bounds,* 430 U.S. at 828.

Additionally, the right set forth in *Bounds* was narrowed by *Lewis*, 518 U.S. at 351-52. In *Lewis*, the Supreme Court held that an inmate has no standing to pursue an access claim unless he can demonstrate he suffered prejudice or actual injury because of the prison officials' conduct. *Id.* Thus, after *Lewis*, "[t]o prove a violation of the right of meaningful access to the courts, a prisoner must establish [1] the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, [2] which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim.'" *Hartsfield*, 511 F.3d at 831 (citations omitted). Dillon conceded in his deposition that he suffered no actual injury. Defendants are entitled to summary judgment on this claim.

## B. Access to the Commissary

The Court does not read the verified Complaint as asserting a claim based on Dillon's not having had access to his commissary account. However, to the extent Dillon is asserting such a claim, Defendants correctly note that there is no constitutional right to access to a commissary. *Tokar v. Armontrout*, 97 F.3d 1078, 1083 (8th Cir. 1996). Defendants are entitled to summary judgment on this claim.

## C. Blocking Phone Access

Next, Dillon argues it violated his constitutional rights when Defendants blocked him from calling his sister. Dillon continued to have phone access to call other numbers. Further, he was not prevented from writing to his sister.

Because the Constitution permits greater restriction of [First Amendment] rights in a prison than it would allow elsewhere, restrictive prison regulations are normally viewed under the four-factor *Turner* test to determine whether they are reasonably related to legitimate penological interests." *Holloway v. Magness*, 666 F.3d 1076, 1080 (8th Cir. 2012) (internal quotation marks and citation omitted). The *Turner* four-factor test is:

> (1) whether there is a valid, rational connection between the regulation and legitimate governmental interests put forward to justify it; (2) whether alternative means of exercising their rights remain open to the prisoners; (3) whether accommodation of the asserted rights will trigger a "ripple effect" on fellow inmates and prison officials; and (4) whether a ready alternative to the regulation would fully accommodate the prisoners' right at *de minimis* cost to the valid penological interest.

*Beaulieu v. Ludeman*, 690 F.3d 1017, 1039 (8th Cir. 2012) (citing *Turner v. Safley*, 482 U.S. 78 (1987); *Benzel v. Grammar*, 869 F.2d 1105, 1108 (8th Cir. 1989)).

In the context of prison regulations on the use of the telephone, it has been recognized that "[a] prisoner has no right to unlimited phone use." *Benzel v. Grammer*, 869 F.2d 1105, 1108 (8th Cir. 1989). The Eighth Circuit went on to state that: "Although

in some instances prison inmates may have a right to use the telephone for communication with relatives and friends, prison officials may restrict that right in a reasonable manner, subject to rational limitations in the face of legitimate security interests of the penal institution." *Id.* (internal quotation marks and citations omitted).

In this case, there was not an across-the-board restriction. Rather, it was a one-time restriction placed on Dillon's ability to call his sister's phone number because he had talked to her about contacting the mother of the victims—something he was not permitted to do directly.[4] The restriction was based on a legitimate governmental interest in ensuring Dillon did not engage in criminal activity, *i.e.*, tampering with witnesses; the restriction was rationally connected to the interest put forth, as Dillon had previously attempted to use his sister to contact the victims' mother; Dillon had alternative low-cost means of contacting his sister; the restriction was narrowly tailored; the restriction did not impact fellow inmates; and Dillon testified that he suffered no injury as a result of not being able to contact his sister. (Doc. 20-5 at 24). Defendants are entitled to summary judgment on this claim.

### D. Right to Responses to Grievances

The Court does not read the Complaint as asserting a separate claim based on the grievance procedure or the lack of responses to grievances. Additionally, in his

---

[4] Defendants refer to there having been an order of protection entered. To be clear, the docket sheet submitted by Defendants as an exhibit does not show that the Boone County Circuit Court entered a no contact order or a protective order in Dillon's criminal case. (Doc. 20-6). Instead, it merely shows the Court was going to make that a condition of Dillon's bail. Dillon did not make bail. The phone restriction was based on the fact that the prosecuting attorney's office advised the Criminal Investigative Division that Dillon should not have contact with his victims or their mother. This message was passed onto the jail.

deposition testimony, Dillon indicated that he was not pursuing such a claim. (Doc. 20-5 at 20).

### E. Qualified Immunity

To the extent individual capacity claims are asserted, Defendants correctly contend that they would be entitled to qualified immunity. *See, e.g., Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009) (unless the facts make out a violation of a constitutional right the Defendant is entitled to qualified immunity).

### F. Official Capacity Liability

An official capacity claim against Defendants is the equivalent of a claim against the municipal entity who employs them, here Boone County. *Rogers v. City of Little Rock, Ark.*, 152 F.3d 790, 800 (8th Cir. 1998). Dillon made no allegations in the verified Complaint that a custom or policy of Boone County was the moving force behind the alleged constitutional violations. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). He identified no custom or policy in his deposition. (Doc. 20-5). No official capacity claim has been stated. Defendants are entitled to summary judgment on the official capacity claims.

### IV. CONCLUSION

For the reasons stated, Defendants' Motion for Summary Judgment (Doc. 18) is **GRANTED**, and this case is **DISMISSED WITH PREJUDICE**. A separate judgment will be entered this same day.

IT IS SO ORDERED on this 11th day of April, 2019.

/s/ Timothy L. Brooks
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE